**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,            CRIMINAL CASE NO. 05-cr-80810-1

      v.                            CIVIL ACTION NO. 14-cv-10183

MICHAEL ANTHONY CLARK,       DISTRICT JUDGE SEAN F. COX

      Defendant/Petitioner.       MAGISTRATE JUDGE MONA K. MAJZOUB

_____/

**REPORT AND RECOMMENDATION**

Petitioner Michael Anthony Clark is currently incarcerated at the Federal Correctional Institution in Tucson, Arizona. Before the Court is Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 and his Brief in Support. (Docket nos. 627 and 651.) Petitioner has also filed an Amended Motion to Vacate (docket no. 655), a Second Amended Motion to Vacate (docket no. 659 at 2-11), and a Supplemental Motion to Vacate (docket no. 663), all of which appear to be supplements to Petitioner's original Motion. Respondent United States of America filed a Response to Petitioner's Motion and Brief, in which it also addressed Petitioner's Amended Motion and Supplemental Motion (docket no. 669), and Petitioner replied to Respondent's Response (docket no. 673). Petitioner has also filed a Motion for Evidentiary Hearing (docket no. 649), three Motions for Discovery and Inspection (docket nos. 650, 672, and 681), a Motion for Appointment of Counsel (docket no. 658), and two Motions for the Liberal Construction of Pleading (docket nos. 659 at 1 and 674). The motions have been referred to the undersigned for determination. (Docket nos. 630, 654, 657, 661, 664,

675, and 682.)  Because the record in this case conclusively shows that Petitioner is not entitled to relief under 28 U.S.C. § 2255, an evidentiary hearing is not required to resolve the merits of this action.   28 U.S.C. § 2255(b).   Therefore, the undersigned issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(b).

## I.   RECOMMENDATION

For the reasons stated herein, it is recommended that Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (docket no. 627), Amended Motion to Vacate (docket no. 655), Second Amended Motion to Vacate (docket no. 659 at 2-11), Supplemental Motion to Vacate (docket no. 663), Motion for Evidentiary Hearing (docket no. 649), and Motions for Discovery and Inspection (docket nos. 650, 672, and 681) be **DENIED**.  It is also recommended that Petitioner's Motion for Appointment of Counsel (docket no. 658), and Motions for the Liberal Construction of Pleading[1] (docket nos. 659 at 1 and 674) be **DENIED** as moot.

## II.   REPORT

### A.   Facts and Procedural History

On September 8, 2005, Petitioner and fourteen others were named in an indictment, in which the government alleged that Petitioner directed a large-scale drug distribution and money laundering conspiracy from 1996 to 2005, and brought charges against Petitioner related to that conduct; Petitioner was subsequently arrested in October of 2005.  (Docket nos. 3 and 4.)  In the Superseding Indictment, Petitioner was ultimately charged with Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana under 21 U.S.C. §§ 846 and 841(a)(1); Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine under 21 U.S.C. §§ 846

---

[1] The Court is fully aware of its responsibility to liberally construe the pleadings of *pro se* parties and hold them to a less stringent standard than similar pleadings drafted by attorneys, and it has done so here.  *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Hahn v. Star Bank,* 190 F.3d 708, 715 (6th Cir. 1999).

and 841(a)(1); Continuing Criminal Enterprise (CCE) under 21 U.S.C. § 848; seven counts of Unlawful Use of a Communication Facility to Conspire to Possess with Intent to Distribute Controlled Substances under 21 U.S.C. § 843(b); two counts of Conspiracy to Launder Monetary Instruments under 18 U.S.C. §§ 1956(a)(1)(A)(I) and (a)(1)(B)(I) and 1957(a) and (h)(6); two counts of Felon in Possession of a Firearm under 18 U.S.C. § 924; Criminal Forfeiture under 21 U.S.C. § 853(a); and Criminal Forfeiture under 18 U.S.C. § 982(a)(1).  (Docket no. 259-2; docket no. 271-2.)  Petitioner and one other defendant proceeded to trial on the charges filed against them; the other thirteen defendants elected to plead guilty.  On November 2, 2006, a jury convicted Petitioner on the drug charges, the felon-in-possession charges, and five of the communication facility charges, but acquitted him on the money laundering charges and two of the communication facility charges.  (Docket no. 351.)  District Judge Lawrence P. Zatkoff subsequently sentenced Petitioner to 480 months of incarceration on the marijuana charge, 600 months on the cocaine charge, 600 months on the CCE charge, 48 months on the communication facility charges, and 120 months on the felon-in-possession charges, all to run concurrently. (Docket no. 447.)

Petitioner appealed his conviction and sentence to the Sixth Circuit Court of Appeals alleging that (1) the district court erred in denying his motion to suppress evidence obtained from a Title III wiretap; (2) the district court erred in denying his motion to suppress evidence seized from his residence and vehicles; (3) the district court abused its discretion by denying his motion for a mistrial; (4) the evidence failed to sufficiently establish Petitioner's supervision of five or more criminally involved persons, which was necessary to convict him on the CCE charge; (5) the entry of judgment against him for both the CCE charge and the underlying drug conspiracy charges violated the protection against double jeopardy; (6) his felon-in-possession convictions

3

violate the Ex Post Facto Clause; (7) the district court imposed a procedurally and substantively unreasonable sentence; and (8) his sentence violates due process. *United States of America v. Michael Anthony Clark*, Case No. 07-1310, ECF no. 123-1 (6th Cir. Dec. 29, 2011).[2]  The Sixth Circuit found that the entry of judgment against Petitioner for both the CCE charge and the drug conspiracy charges violated the protection against double jeopardy and vacated Petitioner's drug conspiracy convictions. *Id*. at 14.  It also vacated Petitioner's sentence and remanded for resentencing, as the parties agreed that the district court sentenced Petitioner in a procedurally unreasonable manner by failing to discuss the 18 U.S.C. § 3553(a) factors at the sentencing hearing. *Id*. at 17.  The Sixth Circuit affirmed Petitioner's conviction on all other counts. *Id*. at 23.  Based on the Sixth Circuit's mandate, Judge Zatkoff resentenced Petitioner to 600 months on the CCE charge, 48 months on the communication facility charges, and 120 months on the felon-in-possession charges.  (Docket no. 601.)

### B.    Petitioner's Motions for Discovery and Inspection

Pending before the court are Petitioner's three Motions for Discovery and Inspection (docket nos. 650, 672, and 681).  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Davis v. United States*, No. 2:07-cr-20042-STA, 2015 WL 1467071, at *5 (W.D. Tenn. Mar. 30, 2015), *certificate of appealability denied* (Oct. 20, 2015) (quoting and applying *Bracy v. Gramley,* 520 U.S. 899, 904 (1997) in the context of a § 2255 motion).  Rule 6(a) of the Section 2255 Rules provides, in pertinent part, that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices

---

[2] The Court takes judicial notice of the proceedings in *United States of America v. Michael Anthony Clark*, Case No. 07-1310, conducted in the Sixth Circuit Court of Appeals.  ("[I]t is well-settled that federal courts may take judicial notice of proceedings in other courts of record." *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) (citations and internal quotation marks omitted).)

and principles of law." Rules Governing § 2255 Proceedings, Rule 6, 28 U.S.C. foll. § 2255. But a party requesting discovery must provide reasons for the request and include any proposed interrogatories, requests for admission, or requests for production of documents with the request. *Id*. While Petitioner's Motions for Discovery include proposed document requests, they do not include reasons for those requests. Thus, Petitioner's Motions for Discovery and Inspection should be denied.

### C.    Petitioner's § 2255 Claims

Petitioner filed his Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on January 15, 2014, claiming that he is entitled to relief because he received ineffective assistance of counsel where:

1. Counsel failed to file for or pursue a *Franks* hearing;
2. Counsel failed to ensure protection of Petitioner's speedy trial rights and failed to adequately seek severance from Petitioner's codefendants;
3. Counsel failed to protect Petitioner's Fourth Amendment rights and failed to move to suppress evidence obtained through an unconstitutional search and seizure;
4. Counsel failed to file a motion to suppress evidence obtained from the search and seizure of a tractor-trailer;
5. Counsel failed to pursue the receipt of all *Brady* materials withheld by the government;
6. Counsel failed to competently litigate a claim of actual innocence;
7. Counsel failed to challenge the CCE charge;
8. Counsel failed to challenge the prosecution's use of false and misleading statements and perjured testimony about Petitioner's alleged involvement in numerous murders and drug dealing;
9. Counsel failed to protect Petitioner's due process rights; and
10. Counsel failed to move for a mistrial concerning statements made before the jury.

(Docket no. 627.) Respondent asserts that Petitioner has not established, through citations to the record or otherwise, that his attorneys acted erroneously, or that the result of his trial would have been different absent the alleged errors. (Docket no. 669 at 5.)

D.     **Standard**

A petitioner who files a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 must demonstrate that there was an error of constitutional magnitude, the sentence was imposed outside the statutory limits, or there was an error of fact or law so fundamental as to render the entire proceeding invalid. *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citation omitted). To prevail on a motion to vacate, set aside, or correct sentence alleging constitutional error, the petitioner must show that the error had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

E.     **Analysis**

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 64-86 (1984). To establish ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id.* at 698. Further "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. That is, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citations and internal quotation marks omitted). "[T]he

court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Stated differently, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different." *Id.* at 694.

### 1.    Claims 1, 2, 3, 5, and 7

Petitioner alleges that counsel was ineffective for failing to challenge the information contained in the wiretap and search warrant affidavits, failing to ensure protection of Petitioner's right to a speedy trial, failing to seek Petitioner's severance from his co-defendant, failing to pursue the receipt of all *Brady* materials held by the government, and failing to challenge the sufficiency of the evidence necessary to prove the CCE charge. (Docket no. 627 at 10-11, 12, 12-13; docket no. 655 at 18-22, 27-28; docket no. 659 at 8-11; docket no. 663.)

In fact, Petitioner's attorneys filed two motions to suppress the wiretap evidence (docket nos. 157 and 159) and two motions to suppress the evidence obtained through the search warrants executed at 8843 Livernois Avenue and 7559 Prairie Street in Detroit (docket nos. 149 and 169). Petitioner's attorneys also moved to dismiss the case against Petitioner for violation of the Speedy Trial Act (docket no. 162), and filed oral and written motions for severance from Petitioner's co-defendant (docket no. 342). Additionally, Petitioner's attorneys moved for the disclosure of information within the meaning of Federal Rule of Criminal Procedure 16(a)(1) and any exculpatory evidence within the meaning of *Brady* (docket no. 155); for an order compelling the government agents and law enforcement officers involved in the matter to retain their rough

notes (docket no. 150); for the disclosure of any evidence that the government intended to introduce pursuant to Federal Rules of Evidence 404(b) and 609 (docket no. 151); for the disclosure of impeaching information (docket no. 152); and for unredacted copies of the wiretap and search warrant affidavits (docket no. 167).  Moreover, Petitioner's counsel moved for an acquittal based, in part, on the government's failure to establish the elements of the CCE charge, and his appellate counsel also argued the issue on appeal.  (Docket no. 343 at 4-5; *United States of America v. Michael Anthony Clark*, Case No. 07-1310, ECF no. 123-1 at 12-14.)

Petitioner does not acknowledge or address the motions filed by counsel in any meaningful manner, if at all.  Notably, Petitioner does not make any argument regarding if, how, or why the motions were deficient.  Although Judge Zatkoff denied these motions on various grounds, the fact that Petitioner's attorneys did not prevail on the motions does not mean that they rendered ineffective assistance.  *See Kittka v. Franks*, No. 10-11582, 2012 WL 2367162, at *9 (E.D. Mich. June 21, 2012), *aff'd*, 539 F. App'x 668 (6th Cir. 2013) (citation omitted) ("[T]he term 'effective' assistance of counsel does not necessarily mean the same as 'successful.'").

And to the extent that Petitioner believes that his attorney should have continued to argue on appeal that his right to a speedy trial was violated or that his case should have been severed from that of his co-defendant, Petitioner has not met his burden under *Strickland.*  It is well settled that an "attorney is not required to raise a non-meritorious claim."  *Jalowiec v. Bradshaw,* 657 F.3d 293, 321–22 (6th Cir. 2011) (citing *Wilson v. Mitchell,* 498 F.3d 491, 514–15 (6th Cir. 2007)).  Moreover, a criminal defendant "does not have a constitutional right to have his counsel press nonfrivolous points if counsel decides as a matter of professional judgment not to press those points."  *Coleman v. Mitchell*, 244 F.3d 533, 541 (6th Cir. 2001) (citing *Jones v. Barnes,* 463 U.S. 745, 750–51 (1983)); *see also Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)

8

(explaining that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

Petitioner also alleges that counsel was ineffective in failing to file for or pursue a *Franks* hearing with regard to the wiretap and search warrant affidavits. (Docket no. 627 at 10; docket no. 651 at 36.) "Under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a defendant is entitled to an evidentiary hearing on the veracity of the statements in the affidavit only if 1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false and 2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set aside." *United States v. Frazier*, 423 F.3d 526, 538 (6th Cir. 2005). "Warrant affidavits carry with them 'a presumption of validity,' and 'the challenger's attack must be more than conclusory' and must allege 'deliberate falsity or reckless disregard [on the part] *of the affiant*, not of any nongovernmental informant.'" *United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007) (quoting *Franks*, 438 U.S. at 171) (emphasis added in *Stuart*). The allegations of deliberate falsity and reckless disregard "must be accompanied by an offer of proof[,] [t]hey should point out specifically the portion of the warrant affidavit that is claimed to be false[,] and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171.

Petitioner's allegations in this regard are wholly conclusory. In the brief filed in support of his Motion to Vacate, Petitioner summarizes the substance of the affidavits, namely the statements made by the affiants and the confidential sources, and then he generally states that

9

those statements were uncorroborated, made with a reckless disregard for the truth, and "were knowingly and intentionally made with the intent to excite prejudice against [Petitioner] without due process." (Docket no. 651 at 25-36.) Petitioner does not specify whether he is challenging the statements made by the affiants, by the confidential sources, or both. And Petitioner's allegations are not accompanied by any offer of proof or statement of reasons regarding the material falsity of the statements. Petitioner has failed to show that he was entitled to a *Franks* hearing. Consequently, Petitioner has failed to show that counsel's failure to request a *Franks* hearing was erroneous or that he suffered prejudice as a result.

2.     *Claim 4*

Petitioner alleges that counsel was ineffective for failing to file a motion to suppress the evidence obtained from the search and seizure of a tractor-trailer. (Docket no. 627 at 11.) According to Petitioner, the evidence seized from the tractor-trailer was obtained in violation of the Fourth Amendment because there was no probable cause to search the vehicle, and "the information gained from that search was in violation of an unlawfully obtained warrant from a wiretap." (*Id.*) Respondent argues that Petitioner's claim in this regard is vague, but after a review of the trial transcript, Respondent presumes that Petitioner is referring to a tractor-trailer containing 1156 pounds of marijuana surrounded by broccoli that was searched and seized on May 30, 2005. (Docket no. 669 at 19 (citing docket no. 477 at 19-20).) Respondent argues that Petitioner was not in possession of the tractor-trailer at the time of the search, thus, it is unaware of what standing Petitioner has to challenge the search. (*Id.* at 19-20.) Indeed, Petitioner fails to establish that he has standing to challenge the search and has therefore failed to demonstrate that counsel erred in failing to file a motion to suppress the evidence obtained from that search.

10

3.    *Claim 6*

Petitioner argues that his counsel was ineffective because he failed to competently litigate a claim for actual innocence, presumably with regard to the felon-in-possession charges, because his right to own a firearm had been restored under Michigan and federal law.  (Docket no. 627 at 12.)  As Respondent points out and Petitioner seemingly concedes, however, Petitioner's trial counsel moved to dismiss the felon-in-possession charges on the basis that Petitioner's right to possess firearms had been restored under Michigan law (docket no. 156), and his appellate counsel continued to argue the matter on appeal, which argument was ultimately rejected by the Sixth Circuit.  But Petitioner argues that his counsel failed to competently investigate and present all of the facts surrounding the restoration of his firearm rights, and had they done so, the felon-in-possession counts would have been dismissed.  (Docket no. 655 at 2-7; docket no. 673 at 1-2.)

Specifically, Petitioner argues that had counsel completed a proper investigation, they would have learned and been able to present evidence that (1) four separate firearms charges previously brought against Petitioner in both federal and state court had been dismissed because Petitioner's right to possess firearms had been restored; and (2) Petitioner applied to the Oakland County Concealed Weapon Licensing Board for restoration of his firearms rights on October 12, 2001.  (*Id.*)  To support his argument in this regard, Petitioner submitted copies of court documents which demonstrate that either the previous firearms charges had been dismissed without prejudice or that he had been acquitted of the charges at trial.  (Docket no. 655 at 34-46.)  Not one of these documents, however, provides any reason for the dismissals or acquittals, thus, they do not establish that the dismissals or acquittals were based on Petitioner's asserted fact that his right to possess firearms had been restored.  Petitioner also submitted a copy of an October 12, 2001 letter sent to the Oakland County Concealed Weapon Licensing Board by attorney S.

11

Allen Early on behalf of Petitioner, to which letter Petitioner's Application for Restoration of Firearms Rights was purportedly attached, as well as a copy of a certificate generated by the National Rifle Association (NRA), which was awarded to Petitioner on September 21, 2001 for the successful completion of an NRA home protection course.  (Docket no. 651-1 at 26-27.)  Again, neither of these documents establishes that Petitioner's right to possess firearms had been restored.  And Petitioner has not produced any evidence that his Application for Restoration of Firearms Rights was ever granted.  Accordingly, Petitioner has not demonstrated that counsel failed to conduct a reasonable investigation into the restoration of his firearms rights, or that a different result would have occurred absent the alleged error.

Petitioner also asserts that his appellate counsel failed to argue that the evidence was insufficient to convict Petitioner on the felon-in-possession charges under 18 U.S.C. § 924(c)(1). (Docket no. 655 at 12-14.)  Petitioner continues that while weapons were seized from his business and residences pursuant to search warrants, "the entire trial court record is completely devoid of any evidence adduced during the prosecution's case-in-chief of any instances of [Petitioner's] actual 'use' or 'active employment' within the meaning of 18 U.S.C. § 924(c)(1) in relation to any drug trafficking activities."  (*Id*. at 12.)  Petitioner misconstrues the requirements of 18 U.S.C. § 924(c)(1).  In fact, 18 U.S.C. § 924(c)(1) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . *uses* or *carries* a firearm, or who, in furtherance of any such crime, *possesses* a firearm" will be sentenced to an additional term of years in addition to the punishment for the underlying crime.  18 U.S.C. § 924(c)(1) (emphasis added).  Petitioner does not dispute that he was in possession of multiple firearms. Petitioner's argument fails.

### 4. Claims 8 and 10

Petitioner alleges that counsel rendered ineffective assistance when he failed to challenge the prosecution's use of false and misleading statements before the grand jury and at Petitioner's sentencing hearing. (Docket no. 627 at 13.) Petitioner, however, does not identify the alleged false and misleading statements used against him, and has therefore provided no basis on which the court may analyze this claim.

Petitioner also asserts that counsel was ineffective because he failed to challenge perjured testimony given by Kevin Youngblood regarding Petitioner's alleged involvement in numerous murders and drug dealing. (*Id.*) Petitioner fails to identify with any specificity the portion of Mr. Youngblood's testimony that was allegedly perjured. Nevertheless, the Court has conducted its own review of Mr. Youngblood's direct examination and presumes that Petitioner is referring to Mr. Youngblood's testimony that Petitioner had entered into contracts to have Mr. Youngblood and two others killed. (Docket no. 485 at 141.) Contrary to Petitioner's allegations, Petitioner's counsel immediately objected to the prosecution's line of questioning, argued that it violated Federal Rules of Evidence 403, 404(b), and 405, and moved to strike Mr. Youngblood's testimony. (*Id.* at 142-154.) Judge Zatkoff sustained counsel's objection and advised that he would not permit any further questioning of Mr. Youngblood regarding Petitioner's propensity for violence, but he declined to give a curative instruction to the jury because the jury had been out to lunch for an hour, and he did not believe that the jury would remember the question and answer. (*Id.* at 155.) Judge Zatkoff also advised Petitioner's counsel that he could propose a jury instruction if he so desired. (*Id.*) Petitioner's counsel subsequently moved for a mistrial on the bases that the prosecution improperly elicited 404(b) testimony from a government agent and from Mr. Youngblood, that the testimony was highly prejudicial to Petitioner, and that no

13

limiting jury instruction could cure the harm caused. (Docket no. 341.) The motion was subsequently denied; however, the record evidence shows that Petitioner's counsel aptly challenged the prosecution's elicitation of Mr. Youngblood's testimony. Petitioner does not explain what else trial counsel should or could have done, and he has failed to demonstrate that counsel's performance was deficient in this regard.

Petitioner alleges that his appellate counsel's performance was ineffective because she failed to raise this issue on direct appeal. (Docket no. 655 at 15-17.) Petitioner is incorrect. On appeal, appellate counsel argued that the trial court abused its discretion by denying Petitioner's motion for a mistrial. Petitioner's argument here fails.

Petitioner also alleges that counsel failed to move for a mistrial when the trial judge brought up previous charges concerning Petitioner. (Docket no. 627 at 14.) Petitioner does not cite to any point in the record at which Judge Zatkoff brought up previous charges. Thus, Petitioner's claim fails on this basis alone. To the extent that Petitioner is referring to the testimony that Petitioner had previously been convicted of armed robbery, which the government elicited from a government agent at trial, Petitioner's claim fails. As stated above, the agent's testimony was a subject of counsel's aforementioned motion for a mistrial. (*See* docket no. 341.)

Next, Petitioner alleges that counsel should have moved for a mistrial because a potential juror spoke in front of the jury pool about a family member who had been killed by someone with the same name of Petitioner. (Docket no. 627 at 14.) Petitioner continues this argument in his Reply brief by arguing that there were only three African-American jurors in the entire jury pool, that he would not have challenged the last two African-American jurors for cause unless it was something outrageous, and that just because a juror says that a tragedy happens in their family isn't a reason to challenge a reasonably good juror of the pool. (Docket no. 673 at 13.)

Petitioner's claim is ambiguous and internally contradictory. Petitioner's purported basis for a mistrial is not readily apparent; it is not clear whether Petitioner alleges that the juror should have been seated, should not have been seated, or if Petitioner alleges something else entirely. Furthermore, as Respondent asserts, a review of the *voir dire* transcript reveals that there is nothing in the record to indicate that such a statement was ever made. (*See* docket no. 669 at 12-13.) Petitioner has failed to show that counsel was deficient and has failed to demonstrate any prejudice in this regard.

5.     *Claim 9*

Petitioner claims that counsel failed to protect his Due Process rights by failing to properly investigate uncorroborated information and material misstatements that Petitioner was known to have murdered several individuals, which information was presented to the magistrate judge and the grand jury and was used in the government's case-in-chief and at sentencing. (Docket no. 627 at 13-14; docket no. 651 at 37.) Petitioner's claim in this regard is disjointed; however, from what the Court can discern, Petitioner is challenging the statements made by the confidential informants in the wiretap affidavit. (*See* docket no. 651 at 37-38; docket no. 655 at 8-11.) Petitioner's argument lacks merit. As discussed above, Petitioner's attorneys filed two motions to suppress the wiretap evidence, in which they challenged the credibility of the confidential informants. (Docket nos. 157 and 159.) They also sought unredacted copies of the wiretap and search warrant affidavits, which would have revealed the identities of the confidential informants and enabled counsel to conduct further investigation into the confidential informants' statements. (Docket no. 167.) As previously stated, the fact that counsel's motions were denied does equate to a finding of ineffective assistance. *See Kittka, supra.*

15

6.    *Petitioner's Other Claims*

Petitioner makes additional claims in his supplemental motions and briefs. First, Petitioner argues that trial counsel rendered ineffective assistance when he failed to interview and call exculpatory witnesses Kenny Moore, Eddie Kendricks, and Jeff Riley at trial. (Docket no. 655 at 23-24, 30.) "A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (citation omitted). Petitioner argues that counsel should have called Mr. Moore and Mr. Kendricks to rebut testimony elicited during the government's case-in-chief that the terms "C.C." and "DVD" are code words for illicit substances. (Docket no. 655 at 23-24.)

A review of the jury transcripts revealed the following testimony regarding the content of the wiretap evidence, which Petitioner's trial counsel elicited from a government agent on cross-examination:

> **Q.** And when you hear things that are called something else, for instance, DVDs or whatever items they choose to be talking about, often times you assume that these are code words for drugs, correct?
>
> **A.** Correct.
>
> **Q.** There was, in fact, a call where there was a discussion about DVDs, correct?
>
> **A.** Correct.
>
> **Q.** And you assumed that they were referencing an amount of drugs, correct?
>
> **A.** I believe at that time, yes.
>
> **Q.** Sometimes, though, DVDs, for instance, being discussed might mean DVDs, right?
>
> **A.** Correct.
>
> **Q.** In fact, when you searched Mr., that house, that house on Prairie where Mr. clerk [sic] was at you saw DVDs on the table, didn't you?

**A.** I don't remember.

**Q.** You got all of the pictures we saw from the search.  You don't remember the bootleg DVDs on the table?

**A.** No, sir. But they are in the pictures.

**Q.** And sometimes you will hear something, do you remember hearing a reference to CC?

**A.** Yes.

**Q.** Did you put in some affidavit that CC was code for cocaine, C, and then you skipped an O and then C again.  That means cocaine, correct?

**A.** Correct.

**Q.** But you since learned there is a person named CC, correct?

**A.** Yes.

**Q.** Sometimes CC might be CC, not cocaine, correct?

**A.** Correct.

(Docket no. 477 at 91-92.)  Counsel's decision to not call Mr. Moore and Mr. Kendricks to testify to alternate meanings of the terms "C.C." and "DVD" does not constitute ineffective assistance where counsel elicited testimony on the matter from the government agent.  *See Strickland,* 466 U.S. at 690.  ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.")

Mr. Riley was purportedly a confidential informant who stated that he had seen a large amount of cash in a secret compartment of Petitioner's vehicle, which statement was included in the wiretap affidavit.  (*See* docket no. 655 at 24, docket no. 651 at 44, docket no. 479 at 63.)  In cross-examining the government's agents, Petitioner's trial counsel elicited testimony that called Mr. Riley's credibility into question.  (Docket no. 477 at 124-26; docket no. 479 at 63-64.)  In

*Strickland*, the Supreme Court stated that "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* Here, Petitioner has failed to overcome the presumption that his trial attorney's decision to challenge Mr. Riley's credibility through a cross-examination of the government's agents rather than by calling Mr. Riley to testify was sound trial strategy. Petitioner has not carried his burden of establishing that his trial attorney was ineffective in this regard.

Next, Petitioner argues that his trial counsel labored under an actual conflict of interest because he engaged in numerous disputes and arguments with his counsel throughout the trial proceedings, including disputes about attorney fees. (Docket no. 655 at 25-26.) "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *McElrath v. Simpson*, 595 F.3d 624, 631 (6th Cir. 2010) (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002)). To establish an "actual conflict," Petitioner must "'point to specific instances in the record to suggest an actual conflict or impairment of [his] interests' and 'demonstrate that the attorney made a choice between plausible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.'" *McElrath v. Simpson*, 595 F.3d 624, 631 (6th Cir. 2010) (quoting *United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000)); *see also United States v. Stotts*, Nos. CV. 01-1001, CR. 96-10015, 2002 WL 1477214, at *13 (W.D. Tenn. July 2, 2002) ("To establish an actual conflict of interest, the defendant must show that (1) the attorney could have pursued a plausible alternative defense strategy, and (2) the alternative strategy was inherently in conflict with or not undertaken due to the attorney's other interest or loyalties.") (citing *United States v. Soldevila-Lopez*, 17 F.3d 480, 486 (1st Cir. 1994)). Petitioner's sole allegation in this regard is that the conflict "adversely

affected counsel's performance at trial."  (Docket no. 655 at 25.)  This conclusory allegation is insufficient to establish an actual conflict under the legal principles cited above.

Moreover, the "*prima facie* evidence" that Petitioner submitted to support this argument belies his assertion of a conflict.  The evidence submitted is a post-trial letter from Petitioner's trial counsel in which he implores Petitioner to respond to his communication attempts; is apologetic for the result of the trial; expresses his wish that Petitioner would have allowed him to follow his suggested trial strategy, which would have enabled him to obtain the information that he believes would have made a difference in the result on the cocaine and CCE charges; reminds Petitioner of the unpaid legal fee balance; and sets forth his "more important concern" that he may have to withdraw from further representation of Petitioner if Petitioner continued to refuse to talk to him about sentencing and Petitioner's legal options going forward.  (Docket no. 655-1 at 2-3.)

Furthermore, as Respondent points out, circuit court precedent does not support Petitioner's assertion of an actual conflict.  (*See* docket no. 669 at 17-18 (citing *United States v. Taylor*, 139 F.3d 924, 932 (D.C. Cir. 1998) ("Although a 'defendant's failure to pay fees may cause some divisiveness between attorney and client,' courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client." (quoting *United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir. 1997) ("we never have held that failure to pay fees or an attorney's motion to withdraw for his client's failure to pay, without more, gives rise to a conflict of interest"); *Caderno v. United States*, 256 F.3d 1213, 1218-19 (11th Cir. 2001) (attorney's post-trial letter expressing frustration over not being paid did not indicate an actual conflict of interest); and *United States v. Wright*, 845 F. Supp. 1041, 1073 n.35 (D.N.J.) ("[N]onpayment of legal fees . . . does not establish a conflict of interest of the type

which would establish ineffective assistance; lawyers are required to provide zealous advocacy regardless of a criminal defendant's failure to pay legal fees."), *aff'd*, 46 F.3d 1120 (3d Cir. 1994) (table)).)

Finally, Petitioner claims that counsel's performance was deficient because he failed to challenge the validity of the Superseding Indictment.  (Docket no. 659 at 2-7.)  According to Petitioner, the fact that the Superseding Indictment says that it was handed down by a grand jury does not mean that it actually was, because there is no record evidence that a grand jury was reconvened for such a purpose.  Petitioner's argument in this regard is conclusory and it sounds in speculation.  Petitioner cannot meet his burden under *Strickland* where his argument has no chance of success.  *See United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004) ("Failing to make a motion . . . that had no chance of success fails both prongs [of *Strickland*].  First, counsel cannot be said to be deficient for failing to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues.  Second, it is evident that failing to make a motion with no chance of success could not possibly prejudice the outcome").  Petitioner has failed to demonstrate that he was deprived of the effective assistance of counsel.

### F.    Conclusion

For the reasons stated above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (docket no. 627), Amended Motion to Vacate (docket no. 655), Second Amended Motion to Vacate (docket no. 659 at 2-11), Supplemental Motion to Vacate (docket no. 663), Motion for Evidentiary Hearing (docket no. 649), and Motions for Discovery and Inspection (docket nos. 650, 672, and 681) should be **DENIED**.  Petitioner's Motion for Appointment of Counsel (docket no. 658), and Motions for the Liberal Construction of Pleading (docket nos. 659 at 1 and 674) should also be **DENIED**, as moot.  The court may, at

its discretion, determine whether an application for a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c).

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated:  February 21, 2017          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Petitioner and counsel of record on this date.

Dated:  February 21, 2017          s/ Lisa C. Bartlett
                                   Case Manager